**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**STATE AUTO PROPERTY AND**                         **PLAINTIFF**
**CASUALTY INSURANCE COMPANY**

**V.**                                  **NO. 3:16-CV-73-DMB-JMV**

**EUGENE BURNETT, Individually and**
**d/b/a JB's Auto and Diesel; and THE**
**UNITED STATES OF AMERICA**                     **DEFENDANTS**

## OPINION AND ORDER

This interpleader action is before the Court on the United States of America's motion for summary judgment, Doc. #32; and State Auto Property and Casualty Insurance Company's motion for summary judgment and motion to strike. Doc. #34; Doc. #42.

### I
### Procedural History

On April 8, 2016, State Auto Property and Casualty Insurance Company filed a "Complaint for Interpleader and Declaratory Judgment" in this Court, naming as defendants "Eugene Burnett, Individually and d/b/a JB's Auto and Diesel," and The Internal Revenue Service. Doc. #1. On May 9, 2016, State Auto filed an "Amended Complaint for Interpleader and Declaratory Judgment" against Burnett, "Individually and d/b/a JB's Auto and Diesel," and the United States of America. Doc. #3. The amended complaint asserts an interpleader action based on Burnett's and the United States' competing claims to building coverage insurance proceeds, and seeks a declaratory judgment that State Auto has satisfied its obligations under the building coverage policy.

On June 6, 2016, Burnett, acting pro se, filed an "Answer and Counter-Claim."[1] Doc. #5. State Auto filed an answer to the counterclaim on June 27, 2016. Doc. #11. On July 5, 2016, Burnett filed an "Amended Answer and Counter-Claim."[2] Doc. #12. Burnett's amended counterclaim alleges, among other things, bad faith by State Auto "for failing to timely make payment" on the policy to Burnett, which permitted the IRS time to make a claim for the policy proceeds when the IRS originally made no such claim. On July 18, 2016, State Auto answered Burnett's amended counterclaim. Doc. #14. The United States filed an answer to the amended complaint on August 3, 2016.[3] Doc. #16.

On August 11, 2016, State Auto filed a motion to deposit the insurance proceeds into the registry of the Court pursuant to Rules 22 and 67 of the Federal Rules of Civil Procedure. Doc. #17. United States Magistrate Judge Jane M. Virden granted the motion on August 16, 2016. Doc. #19.

---

[1] This filing was docketed by the Clerk of the Court as an answer and counterclaim to the original complaint.

[2] This filing is dated July 1, 2016; is postmarked as mailed to the Clerk of the Court on July 1, 2016; and was received and docketed by the Clerk on July 5, 2016—twenty-nine days after Burnett's original answer and counterclaim were served on State Auto through the Court's ECF filing system, and eight days after State Auto filed an answer to the original counterclaim. Burnett's amended answer and counterclaim appear to have been filed in response to State Auto's amended complaint filed on May 9, 2017, as they were filed within the time period allowed under the Federal Rules. The summons to Burnett for the amended complaint was issued by the Clerk on June 7, 2016, Doc. #6; and was served on Burnett on June 11, 2016, Doc. #8. The twenty-first day after Burnett was served was a Saturday, July 2, 2016; making the deadline to respond July 5, 2016, since it was the "the next day that is not a Saturday, Sunday, or legal holiday." A summons to Burnett was issued by the Clerk on April 15, 2016, shortly after the original complaint was filed, Doc. # 2; but, because the docket does not reflect it was served on Burnett, it is unclear as to how or why Burnett came to file a response to the original complaint.

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within … 21 days after service of a responsive pleading …." Rule 15(a)(2) provides that "a party may amend its pleading … with the opposing party's written consent or the court's leave." If Burnett was served with the original complaint, State Auto could not have amended its complaint without the Court's leave or Burnett's written consent due to Burnett's filing of his answer and counterclaim. On the other hand, because State Auto answered Burnett's original counterclaim, Burnett could not have amended his answer and counterclaim without the Court's leave or State Auto's written consent. Because (1) the record is unclear on these matters, (2) Burnett has not challenged State Auto's filing of the amended complaint, and (3) State Auto has not challenged Burnett's filing of his amended answer and counterclaim, the Court presumes and proceeds as if the operative pleadings are State Auto's amended complaint and Burnett's amended answer and counterclaim.

[3] The docket reflects the United States was served on June 14, 2016. Doc. #9.

On October 21, 2016, the United States filed a motion seeking summary judgment that the interpleaded insurance funds are subject to federal liens recorded against Burnett for unpaid federal income taxes and, as a result, should be distributed to the United States. Doc. #32. On December 14, 2016, State Auto filed a separate motion for summary judgment. Doc. #34.

On May 19, 2017, Burnett filed "Defendants Response to the United States' Motion for Summary Judgment," to which the defendants filed separate replies on, respectively, May 25 and May, 26, 2017. Doc. #38; Doc. #40; Doc. #41. Though Burnett's response is directed to the United States' summary judgment motion, State Auto moved to strike Burnett's response. Doc. #42.

## II
## Motion to Strike

State Auto has moved to strike Burnett's response to the United States' motion for summary judgment.[4] Doc. #42. State Auto argues that Burnett's response was (1) grossly untimely under the local rules, (2) lacks competent summary judgment evidence, and (3) fails to properly respond to State Auto's motion for summary judgment and, thus, State Auto's summary judgment motion should be granted.

Uniform Local Rule 7(b)(4) provides:

> Counsel for respondent must, within fourteen days of service of movant's motion and memorandum brief, file a response and memorandum brief in support of the response. … A party must make a request for an extension of time in writing to the judge who will decide the motion. Failure to timely submit the required motion documents may result in denial of the motion.

Because Burnett failed to respond to the United States' summary judgment motion within fourteen days and did not seek an extension of the response period, his response is untimely.

---

[4] State Auto's motion requests the Court "enter an Order striking Burnett's Response to the USA's Motion for Summary Judgment, holding that the facts set forth in State Auto's Motion for summary judgment are undisputed and awarding summary judgment in State Auto's favor …."

Dispositive motions, however, cannot be granted because they are unopposed. *See* Uniform Local Rule 7(b)(3)(E). Summary judgment can only be granted "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it …." Fed. R. Civ. P. 56(e)(3). "The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" *Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 572 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …." *Liberty Lobby, Inc.*, 477 U.S. at 255.

Though Burnett's response was untimely, in the interest of justice, the Court will consider Burnett's response, to which both parties replied without objecting to its untimeliness. *Williams v. Taco Bell Corp.*, No. 01-21132, 2002 WL 1973807, at *2 n.1 (5th Cir. Aug. 2, 2002) ("Although Williams's response was untimely pursuant to a local rule, the district court considered the response in the interest of justice. For purposes of this appeal, we follow the district court's lead and consider Williams's response to Taco Bell's motion for summary judgment.") (internal quotation marks and alterations omitted). Accordingly, State Auto's motion to strike is denied.

### III
### Motions for Summary Judgment

#### A. Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447

(5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## B. Relevant Facts

### 1. Insurance policy and payments

Burnett purchased a commercial insurance policy from State Auto to cover his commercial building and business property. Doc. #34-4. As the named insured, the policy lists "Eugene Burnett dba JB's Auto and Diesel." *Id.* at 2. The policy term was for one year, from January 25, 2015, to January 25, 2016. *Id.* at 12. The policy provided $246,637 of commercial

building coverage, and $29,026 of business personal property coverage.  Doc. #34-5 at 1–2.[5]

On November 14, 2015, Burnett suffered a fire loss to his commercial building.  Burnett filed a claim for the loss with State Auto.  At the time of the loss, Covenant Bank held a mortgage and multiple deeds of trust securing multiple loans on the insured building, and was named the mortgagee under the policy.  Doc. #34-5 at 2.

On November 20, 2015, Burnett was tendered $10,000 as an advance for business personal property and, on January 27, 2016, an additional $11,911.80.  *Id.* at 2–3 & Exs. 1, 2. After Burnett submitted receipts verifying replacement of business personal property lost in the fire, he was tendered an additional $3,465.84.  Doc. #34-5 at 3 & Ex. 3.  This left $3,648.36 remaining as recoverable depreciation under the policy for business personal property.  Doc. #34-5 at 3.

Sometime before January 5, 2016, State Auto conducted a title search of the insured property and discovered the property was subject to a federal tax lien filed in the land records of Panola County, Mississippi, in the sum of $216,925.65 plus interest.  *Id.* at 3; Doc. #1-2.  On January 5, 2016, State Auto spoke with Burnett and obtained contact information from his IRS representative, Pamela Brown, to discuss the tax lien.  Doc. #34-5 at 3.  After State Auto left a voicemail for Brown, on January 14, 2016, IRS representative Jureen Metzler called State Auto. *Id.*  Metzler left a voicemail advising that the IRS should be included on the check for the remaining building proceeds and that the IRS's standard protocol was to sign the check and return it to the policyholder.  *Id.*

On January 26, 2016, State Auto received the amount of Covenant Bank's mortgage and

<hr />

[5] These policy coverage amounts are taken from the affidavit of Mike Myers, a senior claim examiner who worked for State Auto at the time of the fire.  A review of the written policy's "Commercial Property Coverage Part Declarations" shows building coverage of $241,845 and business property coverage of $28,120.  Doc. #34-4 at 13.

interest totaling $158,144.26. Doc. #34-5 at 3–4 & Ex. 4. The next day, State Auto issued a check jointly to Eugene Burnett d/b/a JB's Auto and Diesel and Covenant Bank for $158,144.26. Doc. #34-5 at 3–4 & Ex. 1. These payments left a balance of building coverage under the policy in the amount of $88,492.74. Doc. #34-5 at 4.

On January 27, 2016, State Auto requested a check in the amount of $81,736.74 payable to "Eugene Burnett and Ernestine Burnett and Department of Treasury-IRS" and a check for $6,756 payable to "Eugene Burnett and Ernestine Burnett and State of Mississippi Department of Revenue." *Id*. These checks were issued on January 28, 2016. *Id*. & Ex. 5. State Auto notified Burnett of these payments in a letter dated January 27, 2016. Doc. #34-5 at 4 & Ex. 6. After learning that the Mississippi Department of Revenue lien had been cancelled, State Auto voided the $6,756 check. Doc. #34-5 at 4–5. On February 1, 2016, State Auto, through counsel, sent a letter to the Advisory Group Manager with the Department of Treasury, memorializing State Auto's understanding of the voicemail—that the IRS would endorse the check and return it to Burnett—enclosing the $81,736.74 check. Doc. #34-5 at 5 & Ex. 7.

In response to the February 1, 2016 letter, Metzler called State Auto and left a voicemail requesting additional documents concerning the policy and stating that if the IRS has an interest in the remaining building coverage under the policy, the IRS will collect that amount. Doc. #34-5 at 5–6. On February 3, 2016, State Auto sent a letter to Metzler enclosing a copy of the policy declarations, photos of the fire damage, and a copy of the title opinion. *Id*. & Ex. 8. On March 7, 2016, State Auto's counsel sent a letter to Burnett and State Auto informing them that the IRS was making a claim for the remaining $88,492.74, stating that the amount "is encumbered by the Federal Tax Lien (IRC §6321) and should be submitted to the Internal Revenue Service as payment toward [Burnett's] current tax liability." Doc. #34-5 at 6 & Ex. 9.

As of December 12, 2016, Burnett had not provided State Auto with any written report of debris removal expenses, or any receipts, invoices or estimates for debris removal expenses. Doc. #34-5 at 6.

## 2. IRS documents

The IRS produced four documents, each entitled, "Certificate of Assessments, Payments and Other Specified Matters," which the IRS states "are certified official transcripts of computer entries identifying assessments, payments, and credits on the Burnetts' accounts for given taxable periods." Doc. #32-1 at ¶ 4; Doc. #32-2.

The 2007 "Certificate of Assessments, Payments and Other Specified Matters" shows the following events recorded include:

| | | |
|---|---|---|
| 05-06-2013 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE | |
| 05-13-2013 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | |
| 05-13-2013 | INTENT TO LEVY COLLECTION DUE PROCESS NOTICE RETURN RECEIPT SIGNED | |
| 05-20-2013 | PENDING INSTALLMENT AGREEMENT | |
| 05-24-2013 | FEDERAL TAX LIEN | |
| 06-10-2013 | MODULE REVERSED OUT OF FEDERAL PAYMENT LEVY PROGRAM | |
| 07-24-2013 | INSTALLMENT AGREEMENT | |
| 08-26-2013 | SUBSEQUENT PAYMENT | $395.00 |
| 09-24-2013 | SUBSEQUENT PAYMENT | $500.00 |

| 10-28-2013 | SUBSEQUENT PAYMENT | $500.00 |
| 11-26-2013 | SUBSEQUENT PAYMENT | $500.00 |
| 12-23-2013 | SUBSEQUENT PAYMENT | $500.00 |
| 01-27-2014 | SUBSEQUENT PAYMENT | $500.00 |

*See* Doc. #32-2. Payments of $500.00 were recorded on a monthly basis through May 26, 2016. This Certificate reflects the account status as of June 22, 2016. *Id.*

The 2008, 2009, and 2010 Certificates also show entries of "Pending Installment Agreement" on May 20, 2013; "Federal Tax Lien" on May 24, 2013; and "Installment Agreement" on July, 24, 2013. *Id.*

On May 30, 2013, the IRS filed a "Notice of Federal Lien" on the unpaid 2007 through 2010 taxes against the Burnetts with the Chancery Clerk of Panola County, Mississippi. Doc. #32-4. The IRS claims as of September 30, 2016, Burnetts' tax liability was $251,320.50, including tax, penalties, and interest. Doc. #32-1 at ¶ 5–7; Doc. #32-3.

### C. State Auto's motion for summary judgment

An interpleader action is an equitable remedy that has long existed for the purpose of enabling "a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all the claimants to litigate their claims in a single action brought by the stakeholder." *Underwriters Grp., Inc. v. Clear Creek Indep. Sch. Dist.*, No. G-05-334, 2006 WL 1852254, at *3–4 (S.D. Tex. June 30, 2006) (quoting 7 Charles Alan Wright, Arthur Miller & May Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1702 (3d ed. 2001)).

A court analyzes an interpleader action in "two distinct steps." The first step requires the court to decide "whether the requirements for rule or statutory interpleader action have been

met." *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 193 (5th Cir. 2015). Generally, the first requirement is met "if there is a single fund at issue and [if] there are adverse claimants to that fund." *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). However, the party seeking the interpleader bears the burden of establishing that the requirements are satisfied. FEDERAL PRACTICE AND PROCEDURE § 1714. If the party seeking interpleader, commonly referred to as the stakeholder, satisfies the interpleader requirements, he may seek dismissal from the action. *Id.*

After concluding that the requirements of an interpleader action are satisfied, a court moves on to the second step of the analysis, which requires the court to determine the "'claimants' respective rights to the fund." *Gen. Elec. Capital Assurance v. Van Norman*, 209 F.Supp.2d 668, 670 (S.D. Tex. 2002) (citing FEDERAL PRACTICE AND PROCEDURE § 1714). At this stage, the interests of the respective claimants are adverse and may be adjudicated by summary judgment if there are no genuine issues of material fact regarding which claimant is rightfully entitled to the interpleaded funds. FEDERAL PRACTICE AND PROCEDURE § 1714. However, when genuine issues of material fact exist, each claimant bears the burden of proving his right to the fund by a preponderance of the evidence at trial by the ultimate finder of fact. *Id.; Gen. Elec. Capital Assurance*, 209 F.Supp.2d at 670.

State Auto argues in its summary judgment motion that (1) it has complied with all interpleader requirements; (2) Burnett's counterclaim for bad faith fails as a matter of law and should be dismissed with prejudice; (3) any claim for debris removal under the policy is time barred; and (4) it is entitled to various forms of relief, including dismissal with prejudice. Burnett failed to respond to State Auto's motion.

### 1. Interpleader requirements

In federal court, "[t]here are two types of interpleader: rule interpleader pursuant to Fed. R. Civ. P. 22 and statutory interpleader under 28 U.S.C. § 1335." *Auto Parts Mfg. Miss., Inc.*, 782 F.3d at 192. State Auto asserts in its amended complaint that this Court has jurisdiction based on the diversity of citizenship statute, 28 U.S.C. § 1332(a), without mentioning § 1335. *See* Doc. #3 at ¶ 4. Thus, State Auto brings a rule interpleader action. *See Auto Parts Mfg. Miss.*, 782 F.3d at 192.

Section 1332 jurisdiction under Rule 22 requires: "(1) complete diversity of citizenship, which is met when the stakeholder is diverse from all the claimants, even if citizenship of the claimants is not diverse; and (2) an amount-in-controversy that exceeds $75,000 exclusive of interest and costs." *Hussain v. Bos. Old Colony Ins. Co*., 311 F.3d 623, 635 n.46 (5th Cir. 2002) (citing 4 MOORE'S FEDERAL PRACTICE § 22.04[2][a]). In this case, complete diversity is present. State Auto is a foreign insurance company existing under the laws of the state of Iowa with its principal place of business in Iowa. Doc. #3 at ¶ 1. Burnett is a citizen of the state of Mississippi. *Id*. at ¶ 2. As "the government is not a citizen of any state, it is not considered in the complete diversity calculus." *Hussain*, 311 F.3d at 365 n.46. As for the amount in controversy, the principal amount at stake of the insurance proceeds is $88,492.74, and thus exceeds the $75,000 threshold. Thus, diversity jurisdiction is established.

No party disputes that there are adverse claimants to a single fund in this case. Rule 22(a)(1) provides in part that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." As the Fifth Circuit has explained, "[t]he central prerequisite for a true interpleader action … is that the plaintiff-stake holder runs the risk—but for determination in interpleader—of multiple liability when

several claimants assert rights to a single stake." *Airborne Freight Corp. v. United States*, 195 F.3d 238, 240 (5th Cir. 1999) (citing *Texas v. Florida*, 306 U.S. 398, 406–07 (1939), and *White v. FDIC*, 19 F.3d 249, 251 (5th Cir. 1994)) (internal quotation marks and alterations omitted).

Burnett claims an interest in the proceeds of the policy as the named insured under the policy.  Doc. #12 at 4–5.  The IRS claims the same proceeds based on a federal tax lien that attached to all of Burnett's property and right to property.  Doc. #16; Doc. #34.  Accordingly, State Auto faces the risk of liability to multiple claimants asserting claims to the policy proceeds. *See, e.g., Hussain*, 311 F.3d at 634 (finding interpleader action when multi-party dispute originated in state court among insured and his attorneys, United States, insurance company, and lender over distribution of insurance proceeds); *Am. Gen. Life Ins. Co. v. Gibson*, No. 13-5069, 2015 WL 280321, at *8 (E.D. La. Jan. 21, 2015) (finding first-stage interpleader appropriate based on competing claim challenging, among other things, insured's designation of beneficiary).  Accordingly, the Court finds that the first step of an interpleader action is satisfied.

### 2.  Bad faith counterclaim

Notwithstanding satisfying the requirements of an interpleader action, the Court must determine whether it would be proper to dismiss State Auto in light of Burnett's counterclaim of bad faith against State Auto alleging delay in paying the funds so as to allow the IRS time to change its mind and make a claim to the proceeds.

"Although a factual dispute may exist as to the rightful ownership of the fund, that dispute does not preclude the granting of summary judgment in favor of the interpleader. It is in the very nature of an interpleader action that two or more parties claim rights to certain money or property." *Commerce Funding Corp. v. S. Fin. Bank*, 80 F.Supp.2d 582, 585 (E.D. Va. 1999).  A court may nevertheless delay or deny discharge of the stakeholder if there are "serious charges

that the stakeholder commenced the action in bad faith." *Underwriters Grp., Inc.*, 2006 WL 1852254, at *5 (citing *Mendez v. Teachers Ins. & Annuity Assoc.*, 982 F.2d 783, 788 (2nd Cir. 1992)).

Under Mississippi law,[6]

> [w]here an insurance carrier denies or delays payment of a valid claim, [a bad faith claim] will not lie if the carrier has a reasonable cause for such denial or delay. Thus, where the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon this if reasonable minds could differ as to the legitimacy of the carrier's reason. Determination of whether reasonable minds could differ on this issue is a question for the trial judge.

*Stamps v. Estate of Watts*, 528 So.2d 812, 814 (Miss. 1988) (footnote and citations omitted); *Travelers Indem. Co. v. Wetherbee*, 368 So.2d 829, 834–35 (Miss. 1979) (allowing punitive damages when company withheld funds for eight months without reason).

While Mississippi law allows for an insured to bring a claim for bad faith filing of an interpleader action,[7] courts have regularly held that a party in a properly filed interpleader action may not assert a counterclaim based on an entitlement to the funds at issue. *See, e.g., Metro. Life Ins. Co. v. Barretto,* 178 F.Supp.2d 745, 747–48 (S.D. Tex. 2001). However, a bad faith claim may be asserted based on an unreasonable delay in filing an interpleader action. *United Inv'rs Life Ins. Co. v. Grant*, 387 F. App'x 683, 688 (9th Cir. 2010).

To the extent Burnett's counterclaim is based on a direct entitlement to the funds, such claim must be dismissed because, as discussed above, this was a properly filed interpleader action. *Barretto*, 178 F.Supp.2d at 747–48. To the extent the counterclaim is based on an

---

[6] There is no dispute that Mississippi law applies to the state law counterclaim for bad faith but that federal law governs questions of procedure. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

[7] *See Vaughn v. Monticello Ins. Co.*, 838 So.2d 983, 988 (Miss. Ct. App. 2001) (in bad faith action based on "bad faith filing of an interpleader action" noting Mississippi Supreme Court "held that the interpleader did not insulate the insurance company from potential bad faith liability").

unreasonable delay in commencing this interpleader action, the claim must be dismissed because no reasonable jury could find that State Auto unreasonably delayed payment. After learning of the IRS lien about two months after the fire, State Auto reached out to Burnett's contact at the IRS. In response, the IRS contacted State Auto on January 14, 2016, representing that it would release the proceeds to Burnett upon receiving the check. Only after the amount of Covenant's Bank loan interest was verified could State Auto determine the remaining building coverage amount under the policy to issue the check. This did not occur until January 26, 2016. No facts in the record establish that State Auto was at fault for this delay. The day after Covenant Bank's loan interest was verified, on January 27, 2016, State Auto requested the check and it was issued two days later. Only 17 days had lapsed from the time State Auto was first contacted by the IRS and the check was mailed to the IRS. About a month later, State Auto filed this action. Based on these facts, the Court finds that any delay was legitimate and no reasonable jury would find otherwise.

Accordingly, the Court will grant State Auto's summary judgment motion as to Burnett's bad faith counterclaim, with such claim dismissed with prejudice.

### 3. Debris recovery

According to the policy, a claim for debris removal must be "reported to [State Auto] in writing within 180 days of the date of the direct physical damage." Doc. #34-4 at 24. The fire loss to the insured property occurred on November 14, 2015. Doc. #35-5 at 1. State Auto presented undisputed evidence that Burnett did not notify State Auto in writing within 180 days of the damage, and "no receipts, invoices or estimates for debris removal expenses have ever been submitted by Burnett to State Auto." Doc. #34-5 at 6. Neither defendant has challenged State Auto's failure to interplead proceeds under the debris recovery provisions of the policy.

Because the defendants do not dispute State Auto's failure to interplead funds for debris recovery and because the Court finds that any claim for debris removal related to the November 14, 2015, fire would be time barred under the policy, State Auto has no further liability under the policy with regard to debris recovery in relation to the fire on November 15, 2015.

### 4. Relief

In its motion, State Auto requests the following relief:

> State Auto would respectfully request an order from the Court finding that State Auto has satisfied all duties currently owed under the building coverage of the subject policy by tendering all available building coverage under the policy; that State Auto has satisfied all duties and obligations currently owed under the business personal property coverage provisions of the policy, but allowing Burnett to submit additional claims for the remaining recoverable depreciation in the future, which will then be evaluated under the terms, conditions and exclusions of the policy; that any claim for debris removal coverage is now time barred under the terms of the policy; that State Auto has exhausted its applicable limits under the subject policy (aside from the aforementioned $3,648.36 in remaining recoverable depreciation) and is relieved and discharged of any further liability or responsibility to the named insured or any other individual or entity under the policy arising out of the aforementioned fire loss; and that Burnett's counterclaim against State Auto is dismissed with prejudice.

Doc. #34 at 13.

When the stakeholder has no further obligation or liability to the parties under a theory for failing to pay the disputed proceeds, the stakeholder is entitled to dismissal. *Underwriters Grp., Inc.*, 2006 WL 1852254, at *6 (citing *Barretto,* 178 F.Supp.2d at 747–48), and *Daniels v. Equitable Life Assurance Soc. of the United States,* 35 F.3d 210, 214–15 (5th Cir. 1994)). State Auto deposited the remaining $88,492.74 in building coverage proceeds with the Court, and has no obligation or liability for debris recovery in relation to the fire. There is no evidence of another obligation pending with regard to the remaining recoverable depreciation of $3,648.36. Because State Auto has no further obligation or liability to either party, the Court finds that State

Auto is entitled to dismissal.[8]

### D. United States' motion for summary judgment

The United States argues the lien on Burnett's property entitles it to the insurance proceeds. In response, Burnett argues that because he is current on an installment agreement with the IRS, it is not entitled to claim the proceeds. Doc. #38. In reply, the United States claims (1) no installment agreement in "good standing" with Burnett has been "established through competent evidence," and (2) even if established, the installment agreement is irrelevant. Doc. #41 at 1–2.

### 1. Jurisdiction over United States

The Government may not be sued unless it has waived its sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 399 (1976). Section 2410(a) "waives the sovereign immunity of the federal government, enabling private parties to hale the government into court to determine the priority of outstanding liens on real or personal property," including in interpleader actions. *Hussain,* 311 F.3d at 629 (citing 28 U.S.C. § 2410(a) (2000)).

### 2. Relevant tax code law

Under 26 U.S.C. §§ 6321 and 6322, if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person" and the lien imposed "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time." *United States v. Furr*, No. 3:06-cv-215, 2007 WL 1893240, at *1 (S.D. Miss. Apr. 11, 2007)

---

[8] The Court expresses no opinion on Burnett's ability to submit additional claims for the remaining recoverable depreciation in the future.

(quoting 26 U.S.C. §§ 6321 and 6322). "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that the first in time is the first in right." *United States v. McDermott*, 507 U.S. 447, 449 (1993) (internal quotation marks omitted) (quoting *United States v. New Britain*, 347 U.S. 81, 85 (1954)).

26 U.S.C. § 6331(a) authorizes the IRS to collect unpaid tax liabilities through the issuance of a levy:

> upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person.... Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official.

26 U.S.C. § 6331(a). The statute specifies, however, that under certain circumstances, a levy may not properly be issued:

> **Installment agreements**.--No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax--
>
> > (A) during the period that an offer by such person for an installment agreement under section 6159 for payment of such unpaid tax is pending with the Secretary ...
> >
> > (C) *during the period that such an installment agreement for payment of such unpaid tax is in effect*; …

26 U.S.C. § 6331(k)(2) (emphasis added).

26 C.F.R. § 301.6331-4(b) provides that even if levying is prohibited, the government may take other actions:[9]

---

[9] The Court notes that a levy and a lien operate quite differently:

> A levy forces debtors to relinquish their property. It operates as a seizure by the IRS to collect delinquent income taxes. *See American Acceptance Corp. v. Glendora Better Builders, Inc.*, 550 F.2d 1220, 1223 (9th Cir. 1977); *see also Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d

**(b) Other actions by the IRS while levy is prohibited—(1) In general.** *The IRS may take actions other than levy* to protect the interests of the Government with regard to the liability identified in an installment agreement or proposed installment agreement. Those actions include, for example—

**(i)** Crediting an overpayment against the liability pursuant to section 6402;

**(ii)** Filing or refiling notices of Federal tax lien; and

**(iii)** Taking action to collect from any person who is not named in the installment agreement or proposed installment agreement but who is liable for the tax to which the installment agreement relates.

**(2) Proceedings in court.** Except as otherwise provided in this paragraph (b)(2), the IRS will not refer a case to the Department of Justice for the commencement of a proceeding in court, against a person named in an installment agreement or proposed installment agreement, if levy to collect the liability is prohibited by paragraph (a)(1) of this section. Without regard to whether a person is named in an installment agreement or proposed installment agreement, however, the IRS may authorize the Department of Justice to file a counterclaim or third-party complaint in a refund action or to join that person in any other proceeding in which liability for the tax that is the subject of the installment agreement or proposed installment agreement may be established or disputed, including a suit against the United States under 28 U.S.C. 2410. In addition, the United States may file a claim in any bankruptcy proceeding or insolvency action brought by or against such person. If a person named in an installment agreement is joined in a proceeding, the United States obtains a judgment against that person, and the case is referred back to the IRS for collection, collection will continue to occur pursuant to the terms of the installment agreement.

---

299, 304–05 (5th Cir. 1985), cert. denied, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *Chevron, U.S.A., Inc. v. United States*, 705 F.2d 1487, 1489–90 (9th Cir. 1983) (levy operates as a seizure). The IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention. *See National Bank of Commerce*, 472 U.S. at 720–21, 105 S.Ct. at 2924–25. A levy connotes compulsion or a forcible means of extracting taxes from "a recalcitrant taxpayer." Interfirst Bank, 769 F.2d at 305. A taxpayer subject to an IRS levy is provided certain protections such as notice and an opportunity to pay the taxes due before the seizure. *National Bank of Commerce*, 472 U.S. at 720–21, 105 S.Ct. at 2924–25; *Interfirst Bank*, 769 F.2d at 305; *Martinez v. United States*, 669 F.2d 568, 569 (9th Cir. 1981).

A lien, however, is merely a security interest and does not involve the immediate seizure of property. *A lien enables the taxpayer to maintain possession of protected property* while allowing the government to preserve its claim should the status of property later change. *If, for instance, the debtor later sells his exempt personal property for cash, the IRS would be entitled to obtain such proceeds.*

*Wagner v. United States*, 545 F.3d 298, 302 (5th Cir. 2008) (quoting *United States v. Barbier*, 896 F.2d 377, 379 (9th Cir. 1990) (emphasis added).

26 C.F.R. § 301.6331-4(b) (emphasis added).

### 3.  Evidence of installment agreement

To the extent the existence of an installment agreement serves as an exception to the IRS' statutory authority to enforce liens, it is properly characterized as an affirmative defense for which Burnett bears the burden.  *See Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) ("[W]hen a proviso carves an exception out of the body of a statute ... those who set up such exception must prove it.") (alterations omitted).  In this regard, the United States argues there is no "competent evidence" in the record establishing an installment agreement in good standing.  However, the Court finds the competent evidence in the record raises a question of material fact as to the existence of an installment agreement between Burnett and the IRS.

Form 4340 "has been held to be presumptive proof of a valid assessment where the taxpayer has produced no evidence to counter that presumption."  *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).  The United States has submitted a Form 4340 ("Certificates of Assessments and Payments") for 2007, 2008, 2009, and 2010.  Each form indicates that on May 20, 2013, an installment agreement was "pending," and shows an entry for an "INSTALLMENT AGREEMENT" on July 24, 2013, followed by subsequent payments of $500 a month through May 2016, the end of the report period.[10]  Form 4340 is presumptive proof of an installment agreement covering Burnett's tax liabilities from 2007 through 2010.  The IRS has not rebutted the existence of an installment agreement but has chosen to neither confirm nor deny its existence.  Just as the United States relies on Form 4340 as "sufficient" and "presumptive" proof of a taxpayer's assessed liabilities, the Court relies on the Form 4340s in this record as

---

[10] The report period ends in June 2016, but a month had not passed since the May, 24 2016 payment and the end of the reporting period.

presumptive proof of an installment agreement. *See* Doc. #33 at 6. Accordingly, a question of material fact arises as to the existence of an installment agreement in good standing.

### 4. Effect of installment agreement

Notwithstanding any factual dispute regarding the existence of an installment agreement, the United States argues it must still prevail because the installment agreement is irrelevant in this interpleader action because the United States is not levying on Burnett's property. Relying in part on *United States v. Stinson*, 45 F. App'x 201, 205 (3d Cir. 2002), the United States argues "section 6631(k) does not prohibit all collection actions," and that it is "expressly permitted to collect tax when it is named a defendant in a suit under 28 U.S.C. 2410." Doc. #41 at 1. The United States cites "Treas. Reg. §§ 301.6331-4(b), 301.6159-1(f)," without further explanation or argument.[11]

While it is correct that § 6631(k) does not prohibit all collection actions,[12] *Stinson* does not suggest that the United States may collect on insurance proceeds in interpleader actions for tax liabilities subject to an installment agreement. *Stinson* held that an installment agreement was irrelevant because § 6631(k) did not preclude the government from reducing the tax liabilities to a judgment. However the reasoning in *Stinson* has been superseded by federal regulation:

> The Government had initially argued that the termination of the Installment Agreement was irrelevant because it could seek judgment on the tax liabilities assessed whether an installment agreement was in effect or not. It based this argument on the Third Circuit's opinion in *United States v. Stinson*, 45 Fed.Appx. 201, 204–205 n.5 (3d Cir. 2002), in which the court held that the existence of an installment agreement would not bar the government from bringing an action to

---

[11] The language found in Treasury regulation §301.6331-4(b) and § 301.6159-1(f) is essentially the same.

[12] "The statute prohibits only court action and levy, 26 U.S.C. § 6331(k), and regulation specifically permits the IRS to take actions other than levy, 26 C.F.R. § 301.6331–4(b)." *United States v. Austin*, No. 09-10405, 2010 WL 1711294, at *3 n.2 (D. Mass. Apr. 26, 2010), aff'd, 526 F. App'x 2 (1st Cir. 2013).

reduce outstanding tax liability to judgment. The *Stinson* case, however, pre-dates 26 C.F.R. 301.6331–4(b)(2), the federal regulation expressly barring such an action while an installment agreement is in effect. *Stinson*'s reasoning has been invalidated, and the Government has accordingly revised its argument to focus on the non-existence of an effective installment agreement at the time this matter was referred for civil action.

*United States v. Margolis*, No. 07-4313, 2008 WL 4823599, at *4 n.3 (D.N.J. Nov. 5, 2008).

Thus, under 26 C.F.R. 301.6331–4(b)(2), the government cannot bring an action against the

taxpayer who is a party to an installment agreement. *See* 26 C.F.R. § 301.6331-4(b)(2) ("Except

as otherwise provided in this paragraph (b)(2), the IRS will not refer a case to the Department of

Justice for the commencement of a proceeding in court, against a person named in an installment

agreement or proposed installment agreement ….").

Nonetheless, 26 C.F.R. 301.6331–4(b)(2) provides instances when the government can

proceed in court notwithstanding an installment agreement. Specifically, "the IRS may authorize

the Department of Justice … *to join that person in any other proceeding in which liability for the*

*tax that is the subject of the installment agreement … may be established or disputed, including*

*a suit against the United States under 28 U.S.C. 2410.*" 26 C.F.R. 301.6331–4(b)(2)[13] (emphasis

added).

As discussed above, this is "a suit against the United States under 28 U.S.C. 2410."

Aside from this fact, the United States has not explained why it is statutorily entitled to collect

the proceeds in an interpleader action under § 2410 through 26 C.F.R. 301.6331–4(b)(2). The

United States has not established this action falls under this subsection. The Department of

Justice did not "join" Burnett; State Auto named him in the action. Additionally, the United

---

[13] In its brief, State Auto argues that because the IRS also is permitted to take "action to collect from any person who is not named in the installment agreement but who is liable for the tax to which the installment agreement relates," it may be liable to the IRS. Doc. #35 at 9–10 n.1 (alterations removed); *see* 26 C.F.R. § 301.6331-4(b)(iii). However, this subsection does not support a finding that the United States is entitled to the insurance proceeds because State Auto is not jointly liable for the tax to which the installment agreement relates.

States failed to brief whether this action would qualify as a "proceeding in which liability for the tax that is the subject of the installment agreement … may be established or disputed." And, while the enumerated list under this subsection is not exhaustive, the United States has not presented any argument that such collection activity would be permitted if it does indeed fall outside of this subsection.

To determine whether such collection activity is permitted under § 301.6331–4(b)(2), the Court considers the interpretation advanced by the IRS Bulletin. In considering the bulletin, the Court affords the document *Skidmore* deference,[14] under which agency interpretations are entitled to deference but only to the extent that such pronouncements have the power to persuade. *See Emp. Sols. Staffing Grp. II, L.L.C. v. Office of Chief Admin. Hearing Officer*, 833 F.3d 480, 490 (5th Cir. 2016) ("*Skidmore* deference … is a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.") (internal quotation marks omitted).

The IRS Bulletin provides, in relevant part:

> The IRS will not begin a proceeding in court for the collection of any liability to which an installment agreement … relates against a person named in the installment agreement …. In any refund action, however, the IRS may file a counterclaim or third-party complaint against a person without regard to whether that person is named in an installment agreement …. In addition, *the IRS may join a person named in an installment agreement in any other proceeding in which liability for the tax that is the subject of the installment agreement may be established or disputed*, *and may file a claim in any* bankruptcy proceeding, insolvency action, or *interpleader case commenced by other creditors of the taxpayer.*

---

[14] Interpretive bulletins … receive '*Skidmore* deference' …." *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1027 (5th Cir. 2015) (internal citation omitted); *see Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297 (5th Cir. 2000) (applying *Skidmore* deference to Department of Labor Interpretive Bulletin).

Notice of Proposed Rulemaking, IRS Bulletin Reg-104762-00 (2002) (emphases added). In explaining the meaning of this language, the IRS provided that

> the IRS … may file a claim in any … interpleader case *commenced by other creditors of the taxpayer. The IRS may also join the taxpayer in any suit instituted by or against another person liable for payment of the same liability*—i.e.*, in situations where the liability for the tax may be established or disputed*. Such proceedings involve taxes for which more than one person may be jointly and severally liable for the same tax, or may involve persons liable for related liabilities, such as a trust fund recovery penalty under section 6672 or a personal liability for excise tax under section 4103.

*Id*.

First, this is not an interpleader case commenced by a creditor of Burnett. Second, the IRS defined what it meant by "in situations where the liability for the tax may be established or disputed"—that is, "any suit instituted by or against another person liable for payment of the same liability." Third, the IRS provided examples of such proceedings—none of which are similar to this action.[15]

While it is likely that in the absence of an installment agreement, the United States' tax lien would extend to the proceeds,[16] the United States' motion and supporting materials have not

---

[15] "Such proceedings involve taxes for which more than one person may be jointly and severally liable for the same tax, or may involve persons liable for related liabilities, such as a trust fund recovery penalty under section 6672 or a personal liability for excise tax under section 4103." *Id*. These proceedings are permitted because:

> While an installment agreement allows the IRS to accept the payment of tax in installments, the agreement does not conclusively establish the taxpayer's liability. A taxpayer therefore is not prohibited from seeking a refund of taxes paid pursuant to an installment agreement. Allowing the IRS to join the taxpayer in a proceeding where the liability for the tax may be established or disputed will protect the Government from having to litigate the same tax in multiple forums only to face the argument in each separate case (including, potentially, from the taxpayer named in the installment agreement) that the person or persons not party to the suit were solely or principally liable for non-payment of the tax at issue.

*Id*. This rationale does not apply to interpleader actions concerning the payment of insurance policy proceeds.

[16] *See In re Key West Rest. & Lounge*, 54 B.R. 978, 986 (N.D. Ill. Bankr. 1985) (at moment of fire, tax liens that attached to property interest automatically attached to property right to recover proceeds from insurer).

shown that the United States is entitled to the proceeds notwithstanding an installment agreement. Accordingly, the Court will deny the IRS's motion for summary judgment.

**IV**
**Conclusion**

Based on the above:

1.      State Auto's motion to strike [42] is **DENIED**.

2.      State Auto's motion for summary judgment [34] is **GRANTED** and State Auto is **DISMISSED** from this action.

3.      The United States' motion for summary judgment [32] is **DENIED**.

**SO ORDERED**, this 29th day of September, 2017.

/s/Debra M. Brown_____
**UNITED STATES DISTRICT JUDGE**